[No. C. D. 1061.   *En Banc.*   April 5, 1946.]

*In the Matter of the Discipline or Disbarment of* EDWARD D. PHELAN, *an Attorney at Law.*[1]

*Walter F. Fisher* and *Edward D. Phelan,* for respondent.

*S. H. Kelleran,* for board of governors.

STEINERT, J.—This is an appeal from an order of the board of governors of the Washington state bar association recommending to this court the temporary suspension of an attorney from the practice of law.

On or about November 13, 1944, the board of governors filed a complaint charging E. D. Phelan, a practicing attorney, designated herein as respondent, with unprofessional conduct in (1) seeking and securing a loan of money from a client upon a series of promissory notes and checks

[1]Reported in 167 P. (2d) 676.

executed and issued by the respondent to the lender, under an agreement or arrangement with him by which, with the moneys so borrowed, respondent was to bear the expenses of certain litigation wherein the lending client was an interested party; and (2) wrongfully using a check which the same client had entrusted to the respondent for the purpose of effecting a property settlement in an action for divorce instituted by the client against his wife.

Respondent entered a denial of both charges and by further answer set forth in detail his explanation of the several transactions out of which the charges arose.

While the matter was thus pending, and before trial thereon, the issues involved in the first charge in the complaint were fully adjudicated, in favor of the respondent, in a superior court action which had been brought in the meantime by the client against the respondent to recover the amount of the promissory notes and checks first above mentioned. In that action, the superior court made findings specifically to the effect that respondent had *not* agreed to bear the expenses of the former litigation; that the notes and checks given by the respondent did *not* represent loans from the client to the respondent; that those instruments were executed and delivered by the respondent merely as a pledge that he would use the funds derived therefrom in payment of expenses which the client himself had agreed to pay; and that respondent had properly used the moneys and had fully accounted therefor. Upon those findings, the superior court entered judgment dismissing the client's action and allowing costs to the respondent. No appeal was taken from that judgment.

Some months after that matter had been disposed of in the superior court, the complaint upon which the two charges herein were based came on for hearing before the trial committee selected by the board of governors. The trial continued over a period of several days, or parts of days, broken by adjournments to meet the convenience of the parties and their witnesses. The evidence produced upon the trial consists of voluminous testimony and many written exhibits, all incorporated in a record of approxi-

-mately four hundred pages, which have been submitted to us for consideration.

While the two charges are separately stated and involve different transactions, they are nevertheless intimately related to each other in point of time, circumstances, and manner of dealing between attorney and client. For that reason, the issues became intermingled upon the trial before the committee, and consequently the evidence was introduced and considered as a running narrative and exposition of progressive transactions and relations between respondent and his client over an extended period of time.

At the conclusion of all the evidence, the trial committee rendered an eighteen-page memorandum opinion which consisted of (1) a comprehensive summary of the evidence adduced; (2) specific and detailed findings of fact based on the evidence; and (3) conclusions as to the proper determination of the charges and the recommendations to be made thereon.

As to the first charge, that respondent had agreed to bear the expense of the former litigation, the trial committee concluded and recommended that the charge should be dismissed. We are in full accord with that disposition of the first charge and, hence, will give it no further consideration.

As to the second charge, respecting the wrongful use of the check entrusted to the respondent for a specific purpose, the trial committee found that he had wrongfully endorsed the name of the payee on the back of the check; had deposited it in his own bank account; and had thereafter used a part of that fund in paying some of his personal bills. Upon that series of findings, the committee recommended that respondent be suspended from the practice of law in this state for a period of six months.

We shall not review in detail the evidence upon which the trial committee arrived at its conclusion. We see no good reason for doing so, inasmuch as the board of governors has not recommended disbarment, but only a six-month suspension, the fulfillment of which would terminate the

disqualification to which respondent will be subjected if the action of the board is approved by this court.

It is but fair to say that Mr. Phelan did on several occasions endeavor to persuade the payee of the check to accept it in settlement of any property rights she might have had against her husband, the maker of the instrument. The payee consistently refused, however, to accept the check and sign the property settlement agreement. In explanation of subsequent events, Mr. Phelan testified that his client, the maker of the check, thereupon himself endorsed the name of the payee on the back of the instrument in his, Phelan's, presence and then and there instructed the latter to deposit it in his own account, in the hope that the payee would ultimately change her mind and accept the money as a full property settlement. It is further true, and is definitely established by the evidence, that at a later day during the month in which the check was deposited in his account, Mr. Phelan also deposited therein other moneys of his own, sufficient to cover the amount of his client's check. Finally, it is conceded by all parties that, when his use of the check was challenged by his client, the amount thereof was promptly remitted to the client's account in the bank on which the check was originally drawn, and that the client has sustained no loss whatever.

The fact remains, however, that respondent did, without authority, use a portion of the funds for at least several weeks. He himself admits that he acted "improvidently, carelessly, and negligently in the handling of funds placed in his keeping and under his care." This improvidence he ascribes to the tragedies occurring in his family life during that particular period of time; and, as we read the evidence, we are fully convinced, as was the trial committee, that at the time here involved respondent was overcome by a most grievous sorrow, coupled with other distressing circumstances of misfortune. It is not too much to say, as was voiced by the trial committee in its opinion, that "Mr. Phelan did not at any time intend to deprive Mr. Kern [the client] permanently of his money." We make these statements not only because we can with a considerable

degree of compassion take cognizance of the distressing situation in which respondent was placed, but also because we desire to give him the benefit of everything that can be said in his behalf.

However, having most carefully read and considered the evidence, and having weighed it in the balance of the findings made by the trial committee, we are constrained to say that, under the whole record, the trial committee could hardly have come to any other conclusion, nor, consistent with its duty, have imposed any lesser degree of discipline, than it did.

The recommendation of the board of governors is therefore approved, and the respondent will stand suspended from the practice of law in this state for a period of six months.

DRIVER, C. J., BEALS, MILLARD, ROBINSON, SIMPSON, JEFFERS, and MALLERY, JJ., concur.

BLAKE, J., dissents.